Good morning, Your Honors. There are actually two distinct and clear areas of error in what happened below. The first is that the case should never have been heard in the first place because the court lacked subject matter jurisdiction. Secondly, once you get to the merits, the district court issued summary judgment on the issue of whether American Family established that it provided the requisite notice of its new policy exclusion to its insured vein centers, Inc., on a record where that finding was wholly unsupported. And at the very least, the case should be reversed because there's a question of fact regarding whether notice was provided. With regard to the first issue, the subject matter jurisdiction, the only basis for subject matter jurisdiction asserted in this case and the only conceivable basis for jurisdiction is traditional diversity jurisdiction. There's no federal question involved. This is an insurance coverage case. It's a matter of contract. And secondly, the Class Action Fairness Act can't apply because, as the Seventh Circuit pointed out in the Travelers v. Good case, the plain reading of the Class Action Fairness Act in the new section 1332D applies to cases involving plaintiff class actions. Here, the class is a defendant. So under traditional diversity jurisdiction, there's a long line of cases, as I'm sure this court is well aware, starting with Snyder v. Harris that says damages as to multiple different injured parties can't be aggregated to satisfy the $75,000 minimum amount in controversy. This court in 1973 applied that principle to a question of whether a coverage case involving multiple injured parties could be aggregated and held that they could not. And that's the Crenshaw v. Great Central Insurance case that we cited in our papers. More recently, as we also pointed out, we've had this issue specifically with underlying putative class actions with the Sixth Circuit, the First Circuit, and then the Seventh and the Travelers v. Good case all holding that aggregation was inappropriate and therefore jurisdiction was lacking. And with respect to that point, the First Circuit in the CE Design case made the point that, well, for one thing, we don't know if a class is ever going to be certified. At this point, what we're dealing with is just a single claim for $500. In that regard, though, don't we have to look at the amount of controversy at the time of the filing, regardless of whether it's later certified or not certified? Yeah, and I think that's certainly the rule. And I suspect where Your Honor is going with this is to say that at the time that this case was brought, that the underlying case was certified. I forget the timing exactly, but that may have been the case. But ultimately, you still have the aggregation issue. And ultimately, one of the reasons for the anti-aggregation issue is that things can go away. And in this case, which is also up on appeal, or I should say the underlying case is up on appeal, it stopped being class action. The court decertified it. There's a $500 judgment. And now the decertification order is on appeal. But ultimately, we're not saying that this case lacked subject matter jurisdiction because of what stage of the certification process the underlying case might have been in. At the time it was brought, we're simply saying that you can't add up the damages for all the class members to get to an amount in controversy. If the court is to reach the merits of the case, it really is as close to a single-issue case, a single-issue appeal, as I've been involved in. This is a case governed by Missouri law of insurance coverage. The Missouri Supreme Court has said clearly in the higher decision that standard commercial general liability policy language, such as the language in all of the renewal policies at issue in this case, cover the underlying TCPA claims, both under advertising injury and property damage. And ultimately, the result on coverage is the same even if only one apply. So really, all that matters is, did American Family do what it had to do to add a TCPA exclusion to the 2007 renewal policy? And as we pointed out in the papers, and I don't think it's in dispute, it's the insurer's burden to establish that, both that an exclusion is part of the policy and that it applies. And the Missouri law says that the insurer has to provide advanced notice of a new exclusion if they're going to try and add it to a renewal policy because, as it's understood, the term renewal means a policy with the same terms. And here, all that was proffered in evidence was an employee of American Family named Deborah Woodcock, who's not an underwriter, doesn't work anywhere in the mailing process, referred to how things actually got sent out as magic that she is not privy to. And what she did is she reviewed the files. And in reviewing the files, she found that there is no copy of the specific notice allegedly sent to vein centers, that there is nothing in the computer's file that's specific to vein centers regarding this TCPA exclusion. They have an electronic copy of the form letter enclosing policy materials, but it didn't reference the notice form. Let me ask you about that. So American Family was not able to produce a copy of the notice. And, of course, you could look to practice and pattern. Was there any evidence that copies were available for other mailings? Was there a practice or pattern of keeping or not keeping notices? Well, and that's a very interesting question. One thing that I found striking is the fact that there were proofs of mailing in the file with regard to the reservation of rights letters. Yet there was no proof of mailing with regard to this notice. And there are other documents, other policy documents, kept, but not this notice. And that's essentially what the testimony was. And I think American Family's entire argument is, well, pattern and practice evidence can satisfy a burden to establish that something was sent in a particular case. And as a general matter, that's true. But here, nothing that was presented into evidence would get them to that presumption. It's very similar to the case I think both sides have cited, the Missouri Appellate Court case, insurance placements versus Utica, where there is here a witness who is unfamiliar with the system or the practice, was proffered to testify about what they found in the files and essentially said, well, this is how I understand that we usually do things, and it looks like that's what happened here, so that's what I'm going with. And the Missouri Appellate Court said under Missouri law that that's insufficient. And that's the same thing here. Do you think it's insufficient as a matter of law, or do you think it's a fact issue? Well, I think it's insufficient as a matter of law. We did cross-move for summary judgment, saying that essentially this is an issue on which— But you didn't cross-appeal.  Yeah, I don't know if you could. Anyway, what you're really asking for is to have it sent back for further proceedings on this. Right. I mean, I think that it's their burden. They clearly haven't met it, but at the very least it's a fact issue and it should be sent back. You don't think this Deborah Woodcock has sufficient knowledge to establish that the letter was sent? That's correct. She testifies, I have proof that the CSL notification went out to the customer and the dates that the letter went out. Procedurally, this letter went with that CSL. Okay. Why isn't that enough? Because while the language indicates actual knowledge, she also testifies that she's not an underwriter and she doesn't understand how the process works or know how the process works and has no confidence in anything other than, I looked on the computer and that's what it said. So she's just interpreting the computer records of the company? That's correct. Was she a custodian of the records or what was her position? In terms of her job title, I forget. Or why was she the witness on this? Well, that's a good question. It would be a question for American Family. We asked for a 30B6 witness of the person most knowledgeable on this issue. Oh, she was the 30B6 witness? That's correct. Did you offer evidence that you didn't receive it? No, we represent the underlying class. The underlying insured is defaulted in this case, has been generally unavailable. Ordinarily, that would have been something I think that would be helpful, candidly, but it's not our burden and that's the whole reason why insurance companies. If she testified enough to create a presumption of mailing and so forth, then it would have been more than something that you should have done. I mean, might have done or something like that, right? Right, but the testimony needed to be sufficient to create a presumption, both that there was a mailing that was sent and also that the particular key document, the notice form, was included in that mailing. And the equivocal evidence, I think, prevents the presumption as to either of those things. And the other point I was going to make is I've dealt with a lot of insurance companies and that's why good record keeping is key in these circumstances. For example, I know that there's one that I've dealt with where every document that's sent out to an insured is barcoded and scanned into a system. And so the computer matches up the barcode numbers and there's no question of what went out. We don't have that here. You can send it certified mail and keep a simple proof of mailing. That's what American Family did with respect to its reservation of rights letters. Didn't do that here. Just sort of trusted that everything went according to plan and the magic worked and legally that's not sufficient. So unless Your Honors have further questions, I'll reserve the balance of my time. Very well. You may do so. Mr. Martin, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Tony Martin. Together with Ken Lander, we represent American Family in the appeal of this case. We believe that because Judge Hamilton correctly ruled, first of all, in the subject matter jurisdiction issue, denying St. Louis Hart's motion to dismiss, she should be affirmed on that issue and she should also be affirmed on the summary judgment that she granted in favor of American Family, and while at the same time denying St. Louis Hart's motion for summary judgment. Turning, first of all, to the subject matter jurisdiction issue before this Court, there are many cases that have dealt with the issue of subject matter jurisdiction. It was already correctly noted that the time you determine the subject matter jurisdiction is when the case is filed, when the declaratory judgment case is filed. That was this Court's ruling in the Scottsdale Insurance v. Universal Crop Protection case. Also, that case made clear that post-filing events can be used, post-filing events, post-filing information can be used to determine whether there was indeed subject matter jurisdiction, whether there was indeed the amount in controversy sufficient to satisfy federal jurisdiction. In this case, those factors are indeed what we rely upon and what we argued to Judge Hamilton below satisfied her subject matter jurisdiction. As she found in her order denying their motion to dismiss, there were millions of dollars at issue in this case when the case was filed. Clearly, that issue was satisfied. Counsel, can you address the argument by the appellant that Crenshaw controls here in terms of anti-aggregation? Sure. Crenshaw was not a liability case like this case. Crenshaw was, I believe, an uninsured motorist claim in two counts against the insurance company. In that case, in that direct action, there were claims by the mother and father for the wrongful death and there was claim for the daughter for her separate injury. The court held as a matter of law that the vexatious refusal claims failed. Therefore, the maximum amount that could be in controversy under Count 1 was $10,000. The maximum amount that could be in controversy under Count 2 was $10,000. Since those were divisible individual claims, they could not be combined. That's not what we're dealing with here. We're dealing with a liability insurance policy. We're dealing with a case similar to this court's ruling in the case of Scottsdale Insurance versus Universal Crop. The test that this court stated for a liability insurance coverage is the amount in controversy ordinarily equals the probable cost of defense and indemnification of the underlying litigation less any applicable deductible. Well, that's clearly satisfied here. One of the reasons why we put the docket sheets from the underlying case in the record was so that this court would be informed of the magnitude of the work undertaken by counsel retained by American Family to defend its insured vein centers. In addition to removing the case to federal court, they undertook discovery to rebut or try to oppose class certification as well as to defend the case on the merits. They opposed the motion for class certification when Judge Perry granted the motion for class certification. They filed a petition for interlocutory review before this court in 2013. And after that failed, they then filed a motion to decertify the class. That was their first motion to decertify the class. Then they opposed summary judgment. And after they opposed summary judgment and Judge Perry denied summary judgment in the underlying case, then they filed their own motion for summary judgment and alternative motion to decertify the class, which was ultimately granted in the summer of 2017 by Judge Perry. And then the case was appealed to this court and is currently under submission before this court. Obviously, all of those costs, just knowing, having an idea of what it costs to defend the case and undertake all of those actions in the St. Louis metropolitan area shows that the amount in controversy is satisfied on the defense prong alone. Those defense costs are indeed more than $75,000. In fact, they approximate $200,000 at this point. But then not only do we satisfy that prong, also the amount of indemnification requested was in the millions of dollars in their summary judgment against vein centers in the court below. And that was known when the declaratory judgment action was filed. And that's part of the record. So American family, in good faith, made allegations in the complaint for declaratory judgment that the amount in controversy exceeded $75,000. And indeed it does. Indemnification is sought for millions of dollars. And the defense costs also, separate prong, the defense costs alone exceed $75,000. So subject matter jurisdiction really should not be an issue in this case. Nor should, frankly, nor should the issue of whether or not Judge Hamilton properly granted summary judgment in favor of American family. She did so properly while at the same time denying St. Louis Heart's motion for summary judgment. What was the basis of knowledge for this witness to testify about the mailing? Was she simply a person looking at the computer screen and reporting what she saw or did she have any more? Judge, she was designated as a 30 v. 6 witness. I know that, but that's not my question. Well, okay. My question is what was her basis of knowledge when she testified? The basis of knowledge was twofold. One, her job requirement. She'd worked for American Family Insurance for 32 years and in an operational capacity. That's one, her own personal experience. Number two, because she was a 30 v. 6 witness, she researched what would have happened and what should have happened and what did happen. And through her research, she was able to determine that, indeed, as she testified, as you pointed out in questioning counsel for St. Louis Heart, that she had proof that the mailings were sent. She said that. Yes. That's arguably a conclusory statement. Well, it is. So I was trying to understand. Then she went on and elaborated and it's kind of she speaks in acronyms. She does. That's a little hard to follow, but. She does. She speaks in acronyms. You picked her. You thought she was your best 30 v. 6 witness to explain these things. Absolutely. Yeah. And I think it's clearly understood. All right. Why don't you explain it then. Yes, Judge. There's a coverage, a CSL, and that's a coverage summary letter that goes to the insured. And that's dated. And the date on it, that was kept in the EDMS system, another acronym for the insurance company, that was kept in the system. What does it mean? EDMS system. Acronyms mean nothing to someone who's not a. What does it mean? I'm just trying to identify the systems, Judge. I don't recall exactly. It's an electronic data. And what the M stands for, I don't know. It's an electronic data system that held onto a copy of the letter dated August 27 of 2007 that went to vein centers. So in the company's system, they could reproduce it. Absolutely. In their records. They could reproduce it, and they did reproduce it, and it's part of Exhibit 2 to her deposition transcript, as is the other document that was linked, electronically linked. And I'm going to use some acronyms, Judge, and I'm not going to be able to tell you what they mean. I can tell you what it says. The PLC 28075 is a document that informs the insured what the changes are going to be, including the reduction in benefits that's at issue in this case. So was that also reproduced, or was that just an electronic entry? That's an electronic entry, Judge. And it's linked. Exhibit 2 was the cover letter, the coverage summary letter. And it includes the document that I just cited to you, the PLC letter that has on page 2 of it, it's in page 3 of Exhibit 2. Page 3 of Exhibit 2 contains the exact language that went to the insured. And to quote from that, distribution of material in violation of statute's exclusion, it says, we have introduced an exclusion to apply to bodily injury, property damage, and personal advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act. And it continues and talks about other acts, similar acts. Are you reading from a certain page in the appendix there? I am. What page? We can follow along. Yes, Judge. The supplemental appendix is page 30. All right. Essay 30. It's Exhibit 2, page 3 of Exhibit 2. So if you look at Essay 30, that's the specific page. Down at the bottom of the page, and you'll see in bold, highlights distribution of material in violation of statute's exclusion. And then below is what I just read portions to you from the record. Judge Hamilton specifically refers to these documents in her order, right? She does. And she does, in addition to referring to the documents, Judge, she refers to the fact that a colleague of hers, Judge Shaw, had in a similar case, also involving St. Louis Heart, coincidentally, in a similar case had found that that TCPA exclusion was unambiguous, and that it definitely barred coverage for TCPA claims. And that's Judge Shaw's opinion in the Nationwide versus Harris Medical case decided in 2013, 973 F sub second 1045. She followed his ruling. And the exclusion that's at issue in this case is specifically the type of exclusion that the Supreme Court of Missouri invited insurers to add to their policies of insurance at the end of its decision in the higher holdings case. It invited, and that site is 411 Southwestern 3rd at page 274. It's the very end of its opinion, basically saying to the insurance company in that case and any other insurance company in the state of Missouri, if you want to make sure your policies bar this kind of coverage in the future, you can contractually do so. Well, that's what American Family did. Now, this case, I pulled the insurance placements case, insurance placements versus Utica case, because I wanted this court to understand exactly what was going on there. Very similar to this case, the insurance company, their home insurance, there were two insurance companies as defendants in that case, home insurance, it's person in a role similar to what Ms. Cook's Woodcock's role was looked at the computer systems. And in that case, he looked at the computer systems and found there was no notice until after the important date. There was no notice from the insured. That was one of those cases where the insured was required to give notice, not the insurance company. The insured had not given timely notice. Now there's another issue, very similar issue. Well, the insured was trying to turn the tables and use the same rule custom and practice of mailing and the court ruled, okay, insured, you can't get away with that because you're not, not only was the president of that company giving a great deal of inconsistent statements and testimony and affidavits, in addition, he admitted he had no memory of this letter going out. And second of all, it wasn't a custom and practice. They'd only done it once that do doing something once is not a sufficient custom and practice. And so for those reasons, the testimony of that president of that insured was insufficient to raise an issue of fact, I see my time is, is, has expired. Thank you for your argument, Mr. Oppenheim. We'll hear from you in rebuttal. Thank your honors. Uh, with respect to the jurisdictional point, um, there's nothing in the record about defense costs or any amounts for defense costs. And that's probably because the American family is not seeking recoupment of anything. It's spent on the underlying case. That's just simply not an issue in this case. It wants a declaration that there's no coverage for the class. And even if it were seeking the, uh, attorneys fees at spending in the underlying case, the anti-aggregation cases from Snyder on down say that that gets allocated among the class members. So that doesn't get you to $75,000 either. Um, American family relies on Scottsdale, but in Scottsdale, there wasn't a class and each of the separate claimants separately, uh, satisfied the amount in controversy. So it's not particularly helpful for this situation anyway. Um, it struck me that in counsel's attempt to distinguish Crenshaw, he talked about different claims, but that's the heart of the matter, uh, in terms of the jurisdictional analysis. And that's what the seventh circuit talked about in travelers, uh, talking about the fifth circuit's Eagle star case, turning to the merit travelers case. There'd been an assignment. That's correct runner here. Not so right. That is absolutely correct. So why isn't this like the Meridian case then? Um, it is also similar to that, but, um, I think that ultimately I would look, uh, ask the court to look at Crenshaw and it would end to look at the sixth circuit siding case. Um, so you disagree maybe with, I disagree with Meridian. I see. All right. Um, with respect to the merits issue, uh, essentially what the computer says is what should, would have happened, should have happened, but there's nothing showing what did happen, uh,  putting before the court, Miss Woodcock testified that the system doesn't have a copy of what was sent. It has a copy of the forms and there's nothing linking the form notice to that, to the form letter set, uh, allegedly sent to van centers. Thank you, your honors. Okay. Thank you very much. Both of you for your arguments cases submitted and the court will file an opinion in due course.